COURT OF APPEALS
DECISION
DATED AND FILED

October 15, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP2048-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2021CF2140

IN COURT OF APPEALS
DISTRICT I

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

JEREMIAH RASHAD WYATT,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Milwaukee County: MICHELLE A. HAVAS and ANA BERRIOS-SCHROEDER, Judges. *Judgment modified and, as modified, affirmed; order affirmed; cause remanded with directions.*

Before White, C.J., Geenen and Colón, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.   Jeremiah Rashad Wyatt appeals from a judgment of conviction entered following a jury trial for an incident of domestic abuse involving L.E.,[1] and an order of the circuit court denying his postconviction motion without a hearing.[2]  For the reasons set forth below, we affirm.

## BACKGROUND

¶2     On June 1, 2021, the State charged Wyatt with four counts related to a domestic abuse incident involving L.E.:  (1) substantial battery, (2) strangulation and suffocation, (3) false imprisonment, and (4) obstructing an officer.  As alleged in the criminal complaint, on May 29, 2021, Wyatt hit L.E. with a broomstick until the broomstick broke and then hit L.E. with a wooden back scratcher until she lost consciousness.  The complaint further alleged that Wyatt knelt on L.E.'s neck, again until she lost consciousness, and also prevented L.E. from leaving the bedroom for several hours.  L.E. was eventually taken to a hospital, where she spoke with police about her altercation with Wyatt.  The following day on May 30, 2021, police observed a vehicle matching the description of Wyatt's vehicle outside L.E.'s residence.  L.E. ran from the residence screaming that Wyatt was inside.  Police surrounded the residence and instructed Wyatt to come out.  Wyatt refused, and an officer intercepted Wyatt when he attempted to leave through the

---

[1]  In accordance with WIS. STAT. RULE 809.86 (2021-22), we refer to the victim in this matter using her initials.

All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2]  The Honorable Michelle A. Havas presided over Wyatt's trial and entered the judgment of conviction.  The Honorable Ana Berrios-Schroeder entered the order denying Wyatt's postconviction motion.  For ease of reference, we refer to both as the circuit court.

back door.  Wyatt ran back inside, and at that time, police followed him inside the residence where Wyatt was tased and arrested.

¶3     The case proceeded to a jury trial where the State introduced testimony from L.E. and officers involved with questioning L.E. and arresting Wyatt.  The State further introduced photos taken of L.E. at the hospital following the incident and police bodycam footage of Wyatt's arrest.  Wyatt did not testify or call any additional witnesses.  The jury returned guilty verdicts on all counts, and Wyatt was subsequently sentenced to a total of five years and nine months of imprisonment, bifurcated as three years and nine months of initial confinement and two years of extended supervision.  He was additionally credited with 196 days.

¶4     Wyatt moved for postconviction relief, arguing that the State failed to introduce evidence sufficient to support his conviction on count four for obstructing an officer, that the jury instructions on count four were inadequate, that the State improperly commented during closing arguments on his decision not to testify, that he received ineffective assistance of counsel, and that he was entitled to additional sentence credit.  The circuit court denied his motion without a hearing.[3]  Wyatt now appeals.  Additional relevant facts will be set forth below as necessary.

---

[3] We note that the circuit court held a non-evidentiary hearing at which it provided an oral decision on Wyatt's motion and then entered a written order stating that Wyatt's motion was denied for the reasons stated on the record.  We do not consider this hearing to be the type of evidentiary hearing contemplated by *State v. Allen*, 2004 WI 106, ¶9, 274 Wis. 2d 568, 682 N.W.2d 433.

**DISCUSSION**

¶5      On appeal, Wyatt raises five main arguments:  (1) the sufficiency of the evidence supporting count four, (2) the adequacy of the jury instructions given for count four, (3) misconduct by the State during closing arguments, (4) ineffective assistance of counsel, and (5) sentence credit.  We address each argument in turn.

### I.      Sufficiency of the Evidence for Count Four

¶6      Wyatt argues that the evidence introduced at trial was insufficient to support his conviction on count four for obstructing an officer, contrary to WIS. STAT. § 946.41.  Specifically, he contends that the evidence was insufficient to support the third element that the officers were acting with lawful authority when they entered the residence without a warrant to arrest him.[4]  *See* WIS JI— CRIMINAL 1766.  We disagree, and we conclude that the evidence was sufficient to support the third element of obstructing an officer.

¶7      In reviewing a challenge to the sufficiency of the evidence, this court

> may not reverse a conviction unless the evidence, viewed most favorably to the [S]tate and the conviction, is so insufficient in probative value and force that it can be said as a matter of law that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt.

*State v. Poellinger*, 153 Wis. 2d 493, 501, 451 N.W.2d 752 (1990).  "[A]n appellate court may not substitute its judgment for that of the trier of fact," and "[i]f any possibility exists that the trier of fact could have drawn the appropriate

---

[4]  We note that Wyatt does not dispute that there was probable cause for his arrest and his argument is limited to the officers' lawful authority to enter the residence without a warrant.

inferences from the evidence adduced at trial to find the requisite guilt, an appellate court may not overturn a verdict[.]" *Id.* at 507. Whether the evidence is direct or circumstantial, the standard for evaluating the sufficiency of the evidence remains the same. *Id.* at 503. We review a challenge to the sufficiency of the evidence *de novo*. *State v. Smith*, 2012 WI 91, ¶24, 342 Wis. 2d 710, 817 N.W.2d 410.

¶8     At trial, the State presented the testimony of one of the arresting officers. The officer testified that he first met L.E. in the hospital on May 29, 2021, on the evening following the altercation with Wyatt. He testified that L.E. described what happened with Wyatt and that she identified the injuries she suffered. As part of her explanation, she told the officer that she had a child with Wyatt, that her child lived with her, and that her child was also present at her home during the altercation. She further described for the officer that Wyatt was driving a rental vehicle with Florida license plates.

¶9     The officer testified that he identified a vehicle parked outside L.E.'s residence on May 30, 2021, as matching the description of Wyatt's vehicle. As a result, the officer believed Wyatt to be inside L.E.'s residence. Out of a concern for safety and containment, he called for backup to set up a perimeter around the house. He explained that, based on his experience, "[m]any people try to jump out windows, jump out doors, run out doors, escape."

¶10     When the officers knocked on the door, "[i]t's complete silence." "Nothing. No noise." After several minutes, the officers were just about to leave when they heard a female "screaming at the top of her lungs," and then L.E. "comes sprinting out the front door" yelling "he's in there, he's in there." The officer testified that they then advised, "numerous times [with] no response," that

Wyatt was under arrest and "to come out with his hands up." The officer testified that "domestic violence[ calls] are some of the most dangerous calls [they are] called to investigate" and so when Wyatt failed to comply, he began wondering why Wyatt was not complying or responding.

¶11 Eventually, another officer on the scene radioed that Wyatt was trying to leave from the back of the house but ran back inside upon seeing the officer. The officers interpreted Wyatt's actions as "trying to avoid being taken into custody." The officers followed Wyatt, but Wyatt blocked the door. The officers forced their way in, and Wyatt ran through the lower unit of the residence to a stairwell. Wyatt closed and blocked the door to the stairwell, and officers forced their way into the stairwell. Wyatt then ran up the stairs, and the officers tased and arrested him.

¶12 Wyatt contends that the officer's testimony failed to establish that the officers acted with lawful authority when they followed him into the house without a warrant and arrested him. The State argues, and the circuit court found when it denied Wyatt's motion, that exigent circumstances existed that justified the officers' warrantless entry into the residence.[5] Exigent circumstances justifying an officer's entry into a residence without a warrant include preventing the imminent destruction of evidence, hot pursuit of a criminal suspect, preventing injury to the suspect or another person, and preventing the likelihood that the

---

[5] The State raises the additional argument for the first time on appeal that the officers were acting with lawful authority because Wyatt did not own the residence and, therefore, had no protectable Fourth Amendment right. "The general rule is that issues not presented to the circuit court will not be considered for the first time on appeal." *See State v. Caban*, 210 Wis. 2d 597, 604, 563 N.W.2d 501 (1997). Thus, we do not consider the State's argument on this point further.

suspect will escape. *State v. Robinson*, 2010 WI 80, ¶30, 327 Wis. 2d 302, 786 N.W.2d 463.

¶13    Having reviewed the officer's testimony, a jury could reasonably infer that the officers were acting to prevent Wyatt's escape, and therefore, with lawful authority, when they entered the residence and arrested Wyatt. The officer explained that Wyatt refused to comply with the officers' commands, attempted to escape through the back door of the residence, and then blocked the back door to prohibit the officers from following him inside. Once inside, the officers then saw Wyatt attempt to run again, and then block another door, all presumably in an effort to avoid arrest.

¶14    Additionally, the officers spoke to L.E. the previous day about a violent altercation with Wyatt. Therefore, despite L.E. having run from the residence, the officers could have believed L.E. to be in danger as a result of Wyatt's presence at the residence. They also knew that L.E. had at least one young child who lived with her at that home and could have believed that the child was still inside and possibly in danger. Thus, a jury could also have reasonably inferred that the officers were further acting in an attempt to avoid any additional harm coming to L.E. and any children who were still inside.

¶15    Consequently, we reject Wyatt's argument that the State failed to produce sufficient evidence to support his conviction for count four because it failed to introduce evidence to support that the officers were acting with lawful authority in entering the residence without a warrant to arrest Wyatt.

## II. Jury Instructions for Count Four

¶16 Wyatt additionally challenges his conviction on count four by challenging the adequacy of the jury instructions given at trial on this count, and he contends that the jury was not properly instructed on the third element regarding whether the officers acted with lawful authority when they entered the residence without a warrant to arrest Wyatt.

¶17 Importantly, trial counsel did not object to the jury instructions at trial. The failure to object to a jury instruction at the time of trial results in the forfeiture of any error in the instruction. *See* WIS. STAT. § 805.13(3).[6] Wyatt argues that this court should overlook the lack of an objection to the jury instructions at the time of trial because the jury instruction amounts to plain error. However, this court "has no power to reach an unobjected-to jury instruction." *See **State v. Trammell***, 2019 WI 59, ¶25, 387 Wis. 2d 156, 928 N.W.2d 564. We have also specifically stated that "[t]he plain error doctrine does not apply to review of unobjected-to jury instructions." ***State v. Martinez***, 210 Wis. 2d 396, 404 n.5, 563 N.W.2d 922 (Ct. App. 1997). Consequently, we do not discuss Wyatt's direct challenge to the adequacy of the jury instructions given on count four any further.

---

[6] We note that WIS. STAT. § 805.13(3) uses the term waiver. "Although cases sometimes use the words 'forfeiture' and 'waiver' interchangeably, the two words embody very different legal concepts. 'Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right.'" ***State v. Ndina***, 2009 WI 21, ¶¶28-32, 315 Wis. 2d 653, 761 N.W.2d 612 (citation omitted). Thus, while the statute uses the term waiver, the appropriate term to apply here is forfeiture.

### III.    Misconduct by the State During Closing Arguments

¶18    Relying on *State v. Hoyle*, 2023 WI 24, 406 Wis. 2d 373, 987 N.W.2d 732, Wyatt next argues that the State engaged in misconduct during closing arguments by commenting on Wyatt's decision not to testify, in violation of his Fifth Amendment right against self-incrimination under *Griffin v. California*, 380 U.S. 609 (1965).

¶19    In making his argument, Wyatt specifically takes issue with the following portion of the State's closing argument as an impermissible comment on his decision not to testify:

> [L.E.] has nothing to gain.  She has been beat brutally with a backscratcher and a broomstick.  That's it.  It's over.  She's physically suffered from this.  She has no long-term interest in this.  She's not gaining anything from this.  She's here because she wants to see justice.  She's here because this happened to her.  I subpoenaed her and made her come down here.  She told you she didn't want to be here.
>
> Now, the defendant has a constitutional right not to testify, and he did not.  That's his right, so you don't have anything from that.  You cannot really evaluate his credibility.

¶20    We review Wyatt's claim *de novo*.  *Hoyle*, 406 Wis. 2d 373, ¶15.  Furthermore, to assess whether the State made an impermissible comment during closing arguments, we use the test provided by our supreme court announced in *Hoyle* for determining if a prosecutor has impermissibly commented on the defendant's right against self-incrimination:

> First, the prosecutor's language must have been "manifestly intended to be" or was "of such character that the jury would naturally and necessarily take it to be" a "comment on the failure of the [defendant] to testify."  Second, the prosecutor's language must also have been "manifestly intended to be" or was "of such character that the jury

9

> would naturally and necessarily take it to be" "adverse," meaning comment "that such silence is evidence of guilt." Finally, the prosecutor's comments must not have been "a fair response to a claim made by defendant or his counsel."

*Id.*, ¶29 (alteration in original; citations omitted). We conclude that, assuming that Wyatt has satisfied the test set forth in *Hoyle*, any error in the State's comments during close arguments was harmless. *See United States v. Hasting*, 461 U.S. 499, 510-12 (1983) (applying the harmless error rule); *see also Hoyle*, 406 Wis. 2d 373, ¶40.

¶21 Under the harmless error rule, we consider "whether there is a reasonable possibility that the [error] complained of might have contributed to the conviction." *Chapman v. California*, 386 U.S. 18, 23 (1967). Having reviewed the record in this case, we conclude that any error in the State's closing argument could not have contributed to the conviction in light of the overwhelming evidence of Wyatt's guilt.

¶22 At trial, the State presented L.E.'s testimony, the testimony of two officers, photos of L.E.'s injuries taken at the hospital, and police bodycam footage from Wyatt's arrest. In particular, L.E. testified in detail as to the events of May 29, 2021. She described how Wyatt came home, ripped the covers off her while she was sleeping, accused her of cheating on him, and then the two began to fight about a baby that Wyatt recently had with another woman. She further described how Wyatt first hit her with her phone and his fists and then hit her with a broomstick until it broke, hit her with a wooden backscratcher, and also choked her both by putting his hands around her neck and kneeling on her neck. She described how Wyatt would not let her leave the bedroom for hours, and he finally allowed her to leave the room to return a rental car he had used and also to go to McDonald's to buy food for the children. She explained that she sought help at

McDonald's, and when that did not work, she sought help from a friend, and then sought help from her mother. Eventually, her brother took her to the hospital, where L.E. spoke with police and had her injuries documented.

¶23 In light of the overwhelming evidence of guilt presented at trial, we conclude that the State's brief remark during closing arguments did not have any effect on the verdict. As the State observes, this case was about L.E.'s credibility and whether the jury believed L.E.'s detailed—and consistent—account of the events of May 29, 2021. We are, therefore, not convinced that the State's brief remark during closing arguments had any effect on the jury's verdict, and we conclude that the error was harmless as a result.

### IV. Ineffective Assistance of Counsel

¶24 Wyatt further argues that he received ineffective assistance of counsel for three reasons: (1) trial counsel failed to object to hearsay testimony from L.E. about medical opinions provided to her at the hospital, (2) trial counsel failed to request a proper instruction on count four, and (3) trial counsel failed to object to the State's comment during closing arguments about Wyatt's decision not to testify.

¶25 In reviewing Wyatt's postconviction motion alleging ineffective assistance of counsel, we must first "determine whether the motion on its face alleges sufficient material facts that, if true, would entitle the defendant to relief." *State v. Ruffin*, 2022 WI 34, ¶27, 401 Wis. 2d 619, 974 N.W.2d 432. This is a question of law that we review *de novo*. *Id.*

¶26 "If the motion does not raise facts sufficient to entitle the movant to relief, or presents only conclusory allegations, or if the record conclusively

demonstrates that the defendant is not entitled to relief, the circuit court has the discretion to grant or deny a hearing." *State v. Allen*, 2004 WI 106, ¶9, 274 Wis. 2d 568, 682 N.W.2d 433. We review the circuit court's discretion to grant or deny a hearing for an erroneous exercise of discretion. *Id.*

¶27 "Under the Sixth and Fourteenth Amendments to the United States Constitution, a criminal defendant is guaranteed the right to effective assistance of counsel." *State v. Balliette*, 2011 WI 79, ¶21, 336 Wis. 2d 358, 805 N.W.2d 334. A defendant must establish two elements to demonstrate that he received ineffective assistance of counsel: (1) "that counsel's performance was deficient" and (2) "that the deficient performance resulted in prejudice to the defense." *Id.*

¶28 A claim of ineffective assistance of counsel presents a mixed question of fact and law. *State v. Pico*, 2018 WI 66, ¶13, 382 Wis. 2d 273, 914 N.W.2d 95. "We will not reverse the circuit court's findings of fact unless they are clearly erroneous." *Id.* However, we review independently, as a matter of law, "whether those facts demonstrate ineffective assistance of counsel." *Id.*

*A. Failure to Object to L.E.'s Testimony About Medical Opinions*

¶29 Wyatt argues that trial counsel failed to object to testimony from L.E. that medical professionals at the hospital explained to her that she lost consciousness during the altercation. He contends that trial counsel should have objected because L.E.'s testimony was hearsay, an expert medical opinion, and a violation of his right to confrontation.

¶30 We conclude that Wyatt's allegations are conclusory and fail to raise sufficient material facts demonstrating that he is entitled to relief. Indeed, Wyatt simply asserts that L.E.'s testimony amounts to hearsay, an expert medical

12

opinion, and a violation of his right to confrontation, without explaining how or why this is so. *See Allen*, 274 Wis. 2d 568, ¶23 (requiring that a postconviction motion "allege the five 'w's' and one 'h'; that is, who, what, where, when, why, and how"). Without explaining how or why, "[t]his assertion is the defendant's opinion only," and it is insufficient to entitle Wyatt to a hearing. *See id.*, ¶21. Accordingly, we reject Wyatt's argument that trial counsel was ineffective for failing to object to L.E.'s testimony.

### B. Failure to Request an Adequate Jury Instruction on Count Four

¶31 Wyatt next contends that his trial counsel was ineffective for failing to request an adequate jury instruction on count four. We disagree, and we conclude that Wyatt provides only conclusory allegations.

¶32 At trial, the circuit court instructed the jury based on the pattern jury instruction for obstruction of an officer found in WIS JI—CRIMINAL 1766, and as part of that instruction, the jury was instructed that it needed to find that the officers entered the residence with lawful authority in order to satisfy the third element. The circuit court provided the following instruction, "Number three, the officer was acting with lawful authority. Police officers act with lawful authority if their acts are conducted in accordance with the law. In this case it is alleged that the officer was attempting to make an arrest." The jury, however, was not instructed on exigent circumstances, the alleged basis for the officers' lawful authority to enter the residence without a warrant.

¶33 Wyatt contends that his trial counsel should have requested additional instruction on the third element of obstruction of an officer to explain exigent circumstances to the jury and was ineffective in failing to do so. However, Wyatt fails to explain how and why trial counsel's failure to request the instruction

amounts to deficient performance. He also fails to explain how or why he was prejudiced by a failure to further instruct the jury on exigent circumstances. While additional instruction on exigent circumstances may have been appropriate, Wyatt fails to demonstrate that he is entitled to a hearing on this claim.

### C. Failure to Object to Misconduct by the State During Closing Arguments

¶34 Wyatt last faults trial counsel for failing to object to the State's comment during closing arguments about how the jury should assess Wyatt's credibility in light of Wyatt's decision to exercise his right not to testify. We conclude that the record conclusively shows that Wyatt cannot demonstrate prejudice.

¶35 Prejudice requires a showing by the defendant "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694 (1984). As previously detailed, the State presented overwhelming evidence of guilt at trial, and the State's brief comment about Wyatt's credibility does not undermine our confidence in the outcome in the face of this overwhelming evidence of guilt.

¶36 Accordingly, we conclude that Wyatt's claims for ineffective assistance of counsel fail, and the circuit court did not erroneously deny his postconviction motion without a hearing.

### V. Sentence Credit

¶37 Wyatt finally argues that he is entitled to one additional day of sentence credit, amounting to a change from 196 days of credit to 197 days of credit. He states that he was taken into custody on May 30, 2021, and sentenced

on December 13, 2021, and he provides that this amounts to 197 days, and not 196 days. *See* WIS. STAT. § 973.155 (stating that a person is entitled to one day of credit for each day spent in custody). The State does not oppose Wyatt's claim for an additional day of sentence credit.

¶38 We accept the State concession, and therefore, we do not address Wyatt's claim for sentence credit further. Rather, we accept that Wyatt is indeed entitled to an additional day of credit for a total of 197 days, and upon remittitur, the judgment of conviction shall be amended to reflect the additional day of sentence credit. *See* ***State v. Prihoda***, 2000 WI 123, ¶17, 239 Wis. 2d 244, 618 N.W.2d 857; *see also* ***State v. Schwind***, 2019 WI 48, ¶30 n.5, 386 Wis. 2d 526, 926 N.W.2d 742 ("Correcting a clerical error in a judgment does not constitute a modification of that judgment; rather, it is simply a correction of the record to reflect the judgment the circuit court actually rendered.").

**CONCLUSION**

¶39 Accordingly, we affirm the circuit court's order denying Wyatt's postconviction motion without a hearing, and we reject Wyatt's arguments that the State failed to present sufficient evidence at trial to support his conviction on count four, that the jury instruction on count four was inadequate, that the State engaged in misconduct during closing arguments, and that Wyatt received ineffective assistance of counsel. Additionally, we accept the State's concession as to Wyatt's sentence credit, and upon remittitur, the judgment of conviction shall be amended to reflect the additional day of sentence credit.

*By the Court.*—Judgment modified and, as modified, affirmed; order affirmed; cause remanded with directions.

15

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.